1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TALAT MOHAMED KABIL, | CASE NO. 1:08-cv-00281-SMS PC |
| Plaintiff, | |
| v. | ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND WITHIN THIRTY DAYS |
| DONNY YOUNGBLOOD, et al., | |
| Defendants. | (Doc. 3) |
| _____/ | |

### Screening Order

Plaintiff Talat Mohamed Kabil, a former federal prisoner proceeding *pro se* and in *forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983 and state law, filed a fifteen-count complaint on February 27, 2008. Plaintiff consented to jurisdiction by a U.S. Magistrate Judge on March 24, 2008.

Because of apparent errors and omissions in plaintiff's filed complaint, including the absence of numerous exhibits to which the complaint refers, on June 15, 2009, this Court entered an order permitting plaintiff to amend and/or supplement the complaint on or before July 20, 2009. If plaintiff did not amend or supplement by that date, the Court indicated its intent to screen the complaint in the form originally filed. Because plaintiff has not amended or supplemented his complaint, nor contacted the court requesting an enlargement of time, this Court now enters the following screening order, based on plaintiff's complaint as originally filed.

**Screening Requirement.** The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental

1

1    entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the

2    prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon

3    which relief may be granted, or that seek monetary relief from a defendant who is immune from

4    such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion

5    thereof, that may have been paid, the Court shall dismiss the case at any time if the Court

6    determines that . . . the action or appeal . . . fails to state a claim upon which relief may be

7    granted."  28 U.S.C. § 915(e)(2)(B)(ii).

8         **Plaintiff's Complaint, in General.**  In a vague, lengthy and poorly organized first

9    amended complaint, plaintiff first sets forth his factual allegations, organizing them neither

10   chronologically nor by topic.  Plaintiff then asserts fifteen causes of action, none of which is

11   clearly tied to specific factual allegations.  The disorganization is compounded by the inclusion of

12   claims against defendants who are never mentioned in the factual allegations, the absence of

13   allegations against some of the named defendants, and by a large number of "Doe defendants"

14   with confusingly similar names.  The filed copy is both incomplete, omitting the exhibits to which

15   it refers, frequently illegible, and occasionally obscured by the poor quality of the copy submitted

16   for filing.[1]  The complaint not only baffles the reader, it fails to state a claim.

17        This Court will not speculate regarding which facts plaintiff intends to support which

18   constitutional claims.  If plaintiff chooses to amend the complaint, as he is permitted to do

19   pursuant to this order, he must correlate his claims for relief with the factual basis underlying each

20   one, demonstrating how the occurrences of which he complains have resulted in each deprivation

21   of plaintiff's constitutional rights.  To accomplish this objective, plaintiff may find it helpful to

22   reorganize his complaint to set forth each claim individually, followed by the relevant supporting

23   allegations.  Organizing the complaint in this way may also assist plaintiff in identifying and

24   removing irrelevant or unnecessary factual allegations and duplicative or unsupported causes of

25   action.  By simplifying and shortening his complaint, plaintiff will enable the Court to evaluate his

26   claims and the facts supporting each one.  Plaintiff's amended complaint may not exceed twenty-

27   five pages.

28

[1] Nearly the entire portion of Count Nine appearing on page 19 is obscured by a black shadow.

Plaintiff is encouraged to focus on the standard set forth in Fed. R. Civ. P. 8(a). "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, supra, 534 U.S. at 512. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Plaintiff must set forth sufficient factual matter accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, supra, 129 S.Ct. at 1949, quoting Twombly, supra, 550 U.S. at 555. While factual allegations are accepted as true, legal conclusions are not. Ibid.

Although accepted as true, "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level." Id. at 555 (citations omitted). A plaintiff must set forth "the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Id. at 555-56 (internal quotation marks and citations omitted). To adequately state a claim against a defendant, plaintiff must set forth the legal and factual basis for his claim.

In screening a complaint, a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Id. at 514. "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003), quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'"), quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitzke v. Williams, 490 U.S. 319, 330 n. 9 (1989). "[A] liberal interpretation of a

3

1   civil rights complaint may not supply essential elements of the claim that were not initially pled."

2   Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997), *quoting* Ivey v. Bd. of

    Regents, 673 F.2d 266, 268 (9th Cir. 1982).

3
      **Improper joinder.**   Upon amendment, plaintiff's complaint, which advances fifteen
4
    causes of action, will need to be separated into more than one action in order to comply with the
5
    Federal Rules of Civil Procedure.  "A party asserting a claim, counterclaim, crossclaim, or third-
6
    party claim, may join, as independent or alternative claims, as many claims as it has against an
7
    opposing party." Fed.R.Civ.P. 18(a).  This means that a plaintiff cannot combine claims in a
8
    single action unless each of the multiple claims is against the same defendant(s).
9
          Thus multiple claims against a single party are fine, but Claim A against Defendant
10         1 should not be joined with unrelated Claim B against Defendant 2. Unrelated
           claims against different defendants belong in different suits, not only to prevent the
11         sort of morass [that a multiple claim, multiple defendant] suit produce[s], but also
           to ensure that prisoners pay the required filing fees-for the Prison Litigation
12         Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner
           may file without prepayment of the required fees. 28 U.S.C. § 1915(g).
13
          George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).
14
    **II.   Plaintiff's Claims**
15
      **A.      Factual Background**
16
          From May 2007 until some time after February 27, 2008, plaintiff, who now resides in
17
    Egypt, was detained by the U.S. Bureau of Immigration and Customs Enforcement ("BICE") and
18
    housed at the Kern County Jail ("KCJ"), pursuant to a contractual agreement.  Despite the brevity
19
    of plaintiff's tenure at KCJ, he alleges numerous occurrences that gave rise to multiple
20
    constitutional claims against numerous defendants, some of whom plaintiff cannot now identify.
21
      **Plaintiff's broken foot.**  For reasons that are unclear from the complaint, prior to June 12,
22
    2007, plaintiff exercised and played in the prison yard without shoes, burning the soles of his
23
    feet.[2]  Because defendant Moustafi, a prison physician, would not provide the medical shoes
24
    plaintiff had requested, plaintiff borrowed another inmate's shoes, which were too big for
25

26 _____
         [2]  Because of nonstandard usage and spelling, perhaps resulting from imperfect knowledge of English, the
27  intended meaning of some portions of plaintiff's complaint is unclear.  For example, in this claim, the complaint
    reads, in part, " Plaintiff had been asked Dr. Moustfi several times for medical use so he could use it for exercising
28  because plaintiff's bottom feet burned from bobls [indecipherable] he was shoeless while exercising and playing in
    the yard."  Should plaintiff elect to amend his complaint, as he is permitted to do pursuant to this order, he may wish
    to clarify any portions of his complaint that the Court has misunderstood.

plaintiff.  Inevitably, plaintiff's left foot turned in the oversized shoe and was injured.  Plaintiff saw Moustafi on June 13 and insisted that Moustafi x-ray his foot, despite Moustafi's disinclination to do so.  The x-ray revealed two fractures of plaintiff's left foot.  Nonetheless, plaintiff did not see the orthopedist at Kern Medical Center ("KMC") until August 17, 2007, over two months later.  By then, it was too late to apply a cast.

On September 12, 2007, the orthopedist ordered eight therapy sessions before a follow-up appointment on October 16, 2007.  The staff scheduler (either Nurse Doe or clerks Cindy or Debi[3]) could not understand the orthopedist's report and scheduled a single therapy session for October 1, 2007.  Plaintiff missed that session as well as several scheduled follow-up appointments since he was not provided transport.  Nonetheless, on each occasion, he was required to wait in shackles for prolonged periods awaiting the escort that never arrived.

When plaintiff finally returned to the orthopedist on November 9, 2007, the orthopedist again ordered the series of eight therapy sessions.  But, when plaintiff saw Dr. Moustafi on November 14, 2007, the schedulers had not made any therapy appointments.  Moustafi directed Nurse Doe to arrange for appointments and to get approval from BICE.

The therapy appointments had still not been scheduled by November 22, 2007.  In response to Moustafi's inquiry, Nurse Doe indicated that either Cindy or Debi was responsible for scheduling KMC appointments.  Because the orthopedist's November 9, 2007, report was missing from plaintiff's medical file, Moustafi directed scheduling of a single session with additional sessions to be scheduled as directed by the therapist.

**Withholding of medication.**  On September 5, 2007, defendant Nurse Lim refused to give plaintiff his medication[4] for "prejudic[ial] reason," even after plaintiff threatened to file a grievance.  Defendant Carrasco was present but refused to allow plaintiff to speak with the floor supervisor.  Plaintiff prepared a grievance but Carrasco refused to sign it, saying it would be signed by a sergeant.  Plaintiff heard nothing more about his grievance.

---

[3]  Debi is not included among the defendants named by plaintiff in the complaint.  If plaintiff intends Debi to be a defendant, plaintiff must name Debi as a defendant in the amended complaint.

[4]Plaintiff neither identifies the medication nor explains whether it was for his broken foot or another medical need.

**"Violation of Procedure."**   On June 14, 2007, defendants McNell and Ramirez, both correctional officers, assaulted plaintiff by twisting his arms as they escorted him to reception, forcing him to walk on his injured foot despite the doctor's order that plaintiff not walk on it. While plaintiff experienced severe pain, McNell and Ramirez ignored his screaming and laughed at him.   Plaintiff complained to BICE and filed a grievance with the jail, which was received by a deputy, badge no. 496.[5]   Plaintiff received no response to his grievance alleging that McNell and Ramirez violated procedure and protocol.

**November 4 Assault.**   Defendant Roden gave sick inmates stools to sit on while waiting for count.   On November 4, 2007, Roden kicked plaintiff's stool away, told plaintiff that he did not need the stool, then locked plaintiff down for an "unreasonable reason."   Plaintiff requested a grievance form.   Shortly after the lock down following the count, Roden entered plaintiff's cell, directed plaintiff to face the wall, twisted plaintiff's left hand and arm, and caused plaintiff's head and chest to hit the wall.   Roden then escorted plaintiff to the control area, directed plaintiff to lie down on his belly, and secured assistance to handcuff plaintiff.   Roden filed a disciplinary report including false allegations.

As a result of Roden's assault and the handcuffing, plaintiff experienced pain in his hand, neck, elbow and wrist.   When receiving pain medication at the infirmary, plaintiff complained to the night shift Sargent.   Plaintiff was then relocated to the CPOD High Profile Unit and deprived of activities provided to inmates housed in the general population.   Although defendant Luevavos promised an internal investigation, but plaintiff was nonetheless found guilty of the alleged (but untrue) disciplinary violations and denied a copy of the disposition.

**Miscellaneous Allegations.**   On May 23, 2007, defendant Hall failed to wake plaintiff, who was sleeping soundly because of medication administered that morning, causing plaintiff to miss lunch.   As a result, plaintiff was "starving" before dinner time.

On May 30, 2007,  Hall refused to escort plaintiff to the law library.

On May 31, 2007,  Hall locked plaintiff down for several hours for no reason.   When plaintiff requested a grievance from defendant Hall, Hall refused, requiring plaintiff to file his

---

[5]  Plaintiff does not list Deputy, badge no. 496, as a defendant.

grievance on plain paper.  On an unspecified date, Hall assaulted plaintiff in retaliation for filing the May 31 grievance. plaintiff was also relocated multiple times and assigned an incompatible cellmate in retaliation for the May 31 grievance. On July 20, 2007, the May 31 grievance was denied.

Hall threatened plaintiff, warning him not to file a grievance regarding an unspecified incident that occurred on June 14, 2007.

Plaintiff filed a grievance regarding harassment by other inmates but received no response.

## B.   **Defendants**

### 1.   **Identity of Defendants**

The complaint fails to clearly identify which individuals are intended to be defendants. For example, plaintiff names as defendants Kern County Sheriff Danny Youngblood, Michael Rubio, Chairman of the Kern County Board of Supervisors, Sgt. Doe #619, #Do350, and Clerk Tresa but includes no allegations against them in the body of the complaint.  Other individuals, such as clerk Debi and deputy, badge no. 496, are addressed in the complaint but are not named as defendants.  The amended complaint, should plaintiff elect to file one, must clearly identify the individuals that plaintiff intends to name as defendants.

### 2.   **Linkage**

 "Claims against unknown persons are meaningless and uncomprehensible."  Copeland v. Northwestern Mem'l Hosp., 964 F.Supp. 1225, 1234 (N.D.Ill. 1997)(*internal quotations and citations omitted*).  Accordingly, plaintiff must identify as defendants those persons and entities directly responsible for the violations of his constitutional rights. Plaintiff must tie each defendant's actions to the specific harms alleged to have been caused to plaintiff.  Section 1983 provides:

> Every person who, under color of [state law] . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Section 1983 plainly requires an actual connection or link between each defendant's actions and the harm allegedly done to the plaintiff.  *See* Monell v. Department of Social Services,

436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of §1983, if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  A defendant cannot be liable under § 1983 unless an affirmative link or connection exists between that defendant's actions and the claimed injury to plaintiff.  May v. Enomoto, 633 F.2d 164, 167 n. 3 (9th Cir. 1980); Johnson, supra, 588 F.2d at 743.  Plaintiff's complaint must provide sufficient factual allegations to establish the link between each defendant's actions and the injuries to plaintiff for which plaintiff contends he is responsible.

### 3. Supervisory personnel

Plaintiff names as defendants various individuals in supervisory or managerial positions, including Sheriff Danny Youngblood, Michael Rubio, chairman of the Kern County Board of Supervisors, Dr. Moustafi, Lt. Barnes, and Clinical Supervisor B. Whitmore.  Plaintiff must demonstrate that each supervisory or managerial defendant personally participated in the alleged deprivation of plaintiff's rights.  See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

The Supreme Court recently emphasized that the term "supervisory liability," loosely and commonly used by courts and litigants alike, is a misnomer.  Iqbal, supra, 129 S.Ct. at 1949.  Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior.  Id. at 1948; Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Because each government official, regardless of title, is liable only for his or her own misconduct, a plaintiff must demonstrate that each defendant, through his or her individual actions, violated the plaintiff's constitutional rights.

For defendants in supervisory positions, a plaintiff must specifically allege a causal link between each defendant and his claimed constitutional violation.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  To state a claim for relief under § 1983 for supervisory liability, plaintiff must allege facts indicating that each supervisory defendant either personally participated in the alleged deprivation of the plaintiff's constitutional rights, knew of the violations and failed to act to prevent them, or promulgated or "implemented a policy so deficient that the policy 'itself is a

deprivation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (*internal citations omitted*); Taylor, *supra*, 880 F.2d at 1045.

### 4.   "John Doe" Defendants

Plaintiff also names as defendants Sgt. John Doe #619, Sgt. Doe, #Do350 and Nurse Doe, whose names are currently unknown to plaintiff.  The Federal Rules of Civil Procedure include no provision "permitting the use of fictitious defendants." McMillan v. Department of Interior, 907 F.Supp. 322, 328 (D.Nev. 1995), *aff'd*, 87 F.3d 1320 (9th Cir. 1996), *cert. denied*, 519 U.S. 1132 (1997).  *See also* Fifty Associates v. Prudential Ins. Co., 446 F.2d 1187, 1191 (9th Cir. 1970). "As a general rule, the use of 'John Doe' to identify a defendant is not favored."  Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).  Nonetheless, a plaintiff must be afforded an opportunity to identify the unknown defendants through discovery, unless it is clear that discovery will not reveal their identities or the complaint must be dismissed for other reasons.  Ibid.  "While Doe pleading is disfavored, it is not prohibited in federal practice."  Lopes v. Vieira, 543 F.Supp.2d 1149, 1152 (E.D.Ca. 2008).

Although papers and pleadings submitted by *pro se* litigants are subject to a less stringent standard than those of parties represented by attorneys, a *pro se* plaintiff must follow the rules and orders of the Court, including diligently acting to identify any "John Doe" defendants named in his suit.  Grinage v. Leyba, 2008 WL 199720 at 12 (D. Nev. January 17, 2008)(No. 2:06-CV-0835-RLHGWF).  When a plaintiff is not able to name one or more defendants when he files his complaint, he must provide sufficient information to enable the court and his opponents to know who he is trying to identify.  *See* Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 390 n. 2 (1971) (in which "the District Court ordered that the complaint be served upon 'those federal agents who it is indicated by the records of the United States Attorney participated in the November 25, 1965, arrest of the petitioner'"), and Wakefield v. Thompson, 177 F.3d 1160, 1162 n. 4 (9th Cir. 1999) (although the plaintiff did not know the name of the officer who refused to provide the plaintiff's prescription when releasing plaintiff on parole, the plaintiff informed the Court that the name could be secured "by inspecting the 'parole papers that the plaintiff signed at the time of his release' and the 'Duty Roster for that day.'")

### 5. Conspiracy

Similarly, to the extent that plaintiff intends to allege a conspiracy against some or all of the defendants, he must specifically allege the facts supporting his claim and tie those facts to each defendant against whom he alleges conspiracy. A conspiracy claim brought under §1983 requires proof of "an agreement or 'meeting of the minds' to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002), *quoting* United Steel Workers of Amer. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir.), *cert. denied*, 493 U.S. 809 (1989) (*citation omitted*), as well as an "actual deprivation of constitutional rights resulting from the alleged conspiracy." Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006), *quoting* Woodrum v. Woodward County, Okla., 866 F.2d 1121, 1126 (9th Cir. 1989). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, *supra*, 312 F.3d at 441, *quoting* United Steel Workers, *supra*, 865 F.2d at 1541.

### C. Equal Protection Claims

In each count except count 8, plaintiff alleges a violation of equal protection as a pro-forma recitation, without explaining the nature of the violation or tying the alleged equal protection violation to any facts. Although the screening Court accepts factual allegations as true, it does not so accept legal conclusions. Iqbal, *supra*, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ibid. Merely reciting that an incident violated plaintiff's equal protection rights, as plaintiff does here, is insufficient to state a cause of action. Plaintiff must set forth each alleged violation of equal protection as a separate claim, supported by facts addressing the elements of the claim.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). An equal protection claim may be established in either of two ways. First, a plaintiff may demonstrate that the defendant has intentionally discriminated against him based on the plaintiff's membership in a protected class. *See, e.g,* Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001). Under this theory of equal protection, the plaintiff must establish that the defendants' discriminatory

///

10

1    intent resulted from the plaintiff's membership in a suspect class, such as race.  Thornton v. City

2    of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

3          If the circumstances underlying the plaintiff's claim do not involve a suspect classification,

4    the plaintiff may establish an equal protection claim by demonstrating that similarly situated

5    individuals were intentionally treated differently without a rational relationship to a legitimate

     state purpose.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School
6
     District v. Rodriguez, 411 U.S. 1, 57 (1973); Squaw Valley Development Co. v. Goldberg, 375
7
     F.3d 936, 944 (9th Cir. 2004).  To state an equal protection claim under this theory, a plaintiff must
8
     allege that (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally
9
     treated differently than others similarly situated; and (3) there is no rational basis for the differing
10
     treatment.  Village of Willowbrook, supra, 528 U.S. at 564.
11
           Because plaintiff's complaint presents no allegations under either theory of defendants'
12
     intentionally discriminating against him, his equal protection claims fail as a matter of law.
13
           D.      **Due Process Claims**
14
                   1.      **Pro Forma Claims**
15
           As was the case for plaintiff's equal protection claims, in counts 1, 2, 3, 4, 5, 6, 7, 9, 10,
16
     11, 12, 14, and 15, plaintiff alleges a violation of due process as a pro-forma recitation, without
17
     explaining the nature of the violation or tying the alleged equal protection violation to any facts.
18
     Again, a screening court does not accept legal conclusions as true since unadorned assertions of
19
     the elements of a cause of action, supported by mere conclusory statements, are not sufficient to
20
     set forth a cause of action.  Iqbal, supra, 129 S.Ct. at 1949.  Merely reciting that an incident
21
     violated plaintiff's right to due process, as plaintiff does here, does not state a cause of action.
22
     Plaintiff must set forth each alleged due process violation as a separate claim, supported by facts
23
     addressing the elements of the claim.
24
                   2.      **Deprivation of Personal Property**
25
           In count 13, plaintiff alleges that he was deprived of various categories of personal
26
     property when he was transferred to CPOD.  Prisoners have a protected interest in their personal
27
     property.  Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974).  The Due Process Clause protects
28
     prisoners from being deprived of their property without due process of law.  Wolff v. McDonnell,

11

418 U.S. 539, 556 (1974).   An authorized, intentional deprivation of property is actionable under the Due Process Clause.  Hudson v. Palmer, 468 U.S. 517, 532 n.13 (1984); Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985).  In contrast, "[a]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  Hudson, *supra*, 486 U.S. at 533.

Because plaintiff's allegations concerning his personal property deprivation are unclear and incomplete, the Court is unable to determine (1) whether plaintiff was deprived of his property only for the duration of his residence in CPOD, (2) whether the deprivation of plaintiff's property was authorized by law, or (3) whether the deprivation of property was unauthorized.

E.     **First Amendment Claims**

            1.     **Denial of Access to Courts**

In Count 4 (Doe, badge no. 694 and Barnes) and Counts 11 and 12 (Roden), plaintiff contends that the named defendants violated his due process rights were by refusing to process, investigate or facilitate plaintiff's filing of grievances.  Plaintiff's claims are appropriately evaluated as a violations of his First Amendment right of access to courts.

To the extent that plaintiff seeks to impose liability on one or more defendants whose alleged wrongs arose in the course of their serving as a hearing officer on a grievance, plaintiff cannot state a cause of action.  Liability in a §1983 action may not be based on the actions of prison personnel in reviewing a prisoner's administrative appeal.  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993).  Assuming that an underlying complaint gives rise to a Constitutional violation, a hearing officer or other person does not violate the Constitution by failing to acknowledge and cure it.  George, *supra*,  507 F.3d at 609-10.  *See also* Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir. 2005) (complaint examiners who process and investigate plaintiffs' grievances not liable); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir. 1999) (supervisors who negligently fail to detect and prevent misconduct not constitutionally liable); Vance v. Peters, 97

///

F.3d 987, 992-93 (7th Cir. 1996), *cert. denied,* 520 U.S. 1230 (1997) (individual only liable if he caused or participated in constitutional violation).

Prisoners' constitutional right of meaningful access to the courts has been established beyond doubt. <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977). The right extends to prison grievance procedures. <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135, 1138 (9th Cir. 1989). The First Amendment's right of redress against the government includes redress against administrative arms of government, including prison authorities. *See* <u>Soranno's Gasco, Inc., v. Morgan</u>, 874 F.2d 1310, 1314 (9th Cir. 1989).

A prisoner's grievance rights are not without limits, however. Prison regulations may validly infringe on the prisoner's right of redress if they are "reasonably related to legitimate penological interests." <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987). In <u>Turner</u>, the Court identified four factors relevant to determining the reasonableness of a prison rule: "1) whether there is a 'valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it'; 2) 'whether there are alternative means of exercising the right that remain open to prison inmates'; 3) 'the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally'; and 4) the 'absence of ready alternatives' or, in other words, whether the rule at issue is an 'exaggerated response to prison concerns.'" <u>Bradley v. Hall</u>, 64 F.3d 1276, 1279-80 (9th Cir. 1995), *quoting* <u>Turner</u>, *supra*, 482 U.S. at 89-90.

Because the complaint provides too little information about the circumstances of Doe's and Barnes's processing of plaintiff's grievances and Roden's refusal to facilitate the filing of a formal grievance of intervention by a supervising correctional officer, this Court is unable to evaluate plaintiff's claims. As a result, the Court must conclude that plaintiff fails to state a cognizable First Amendment claim in either count.

**D.    <u>First Amendment Claims</u>: <u>Retaliation</u>**

Plaintiff contends that, in response to his filing of a grievance on May 31, 2007, he was subjected to retaliation in various forms, including (1) Defendant Hall's assault; (2) multiple relocations within the jail; and (3) assignment of an incompatible call mate.

///

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); *see also* Valandingham, *supra*, 866 F.2d at 1135; Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under section 1983.  Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity.  Pinard v. Clatskanie School Dist. 6J, 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000); *see also* Lewis v. Jacks, 486 F.3d 1025, 1028 (8th Cir. 2007); see also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v. Hendrix, 423 F.3d 1247, 1250-51 (11th Cir. 2005), cert. denied, 549 U.S. 809 (2006); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Because both litigation in court and filing inmate grievances are protected activities, it is impermissible for prison officials to retaliate against inmates engaging in these activities.

Not every allegedly adverse action will be sufficient to support a retaliation claim under section 1983.  In the prison context, Ninth Circuit cases addressing First Amendment retaliation claims involve situations where the action taken by the defendant was clearly adverse to the plaintiff.  Rhodes, supra,  408 F.3d at 568 (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); Austin, supra, 367 F.3d at 1171 (finding that a guard falsely denied his sexual harassment of a prisoner and later issued a false misconduct report against the prisoner in retaliation for the prisoner's filing a grievance against the guard); Bruce, supra,  351 F.3d at 1288  (retaliatory validation as a gang member for filing grievances); Pratt, supra, 65 F.3d at 806 (retaliatory prison transfer and double-

cell status in retaliation); <u>Valandingham</u>, <u>supra</u>, 866 F.2d at 1138 (false labeling as a "snitch," exposing prisoner to other inmates' retribution); <u>Rizzo</u>, <u>supra</u>, 778 F.2d at 530-32 (retaliatory reassignment out of vocational class and transfer to a different prison), and <u>Hines v. Gomez</u>, 108 F.3d 265, 267 (9th Cir. 1997), <u>cert. denied</u>, 524 U.S. 936 (1998) (upholding a finding  in favor of a prisoner against whom prison officials issued a  false rules violation, of which the prisoner was later found guilty, in retaliation for the prisoner's filing of grievances).

Although plaintiff may well be able to state a retaliation claim upon which relief may be granted, his factual allegations are insufficient to permit the Court to evaluate his claims.

**F.**      **Eighth Amendment Claim - <u>Deliberate Indifference to Serious Medical Needs.</u>**

In Counts 5, 6, 14, and 15, plaintiff alleges that various defendants violated the 8th Amendment by demonstrating deliberate indifference to serious medical need.

**1.**      **<u>In general.</u>**

"Deliberate indifference is a high legal standard." <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" <u>Id</u>. at 1057, *quoting* <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" <u>Toguchi</u>, *supra*, 391 F.3d at 1057, *quoting* <u>Hallett v. Morgan</u>, 296 F.3d 732, 744 (9th Cir. 2002) (*citation omitted*).  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." <u>Farmer</u>, *supra*, 511 U.S. at 834.  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

///

///

**2.   Failure to Provide Medical Transport**

In Count 5, plaintiff alleges that defendants Barnes and Whitmire failed to respond to plaintiff's grievance that he repeatedly missed appointments with the orthopedist and therapy sessions when no escort arrived to take him to the appointments.  Plaintiff adds that he was required to wait hours in shackles only to ultimately be returned to his cell without having received the scheduled treatment or examination.  Unfortunately, because the complaint includes no factual allegations explaining the relationship between Barnes, Whitmore, and the failure of the transport system, the complaint fails to state a claim upon which relief can be granted.

**3.   Refusal to Provide Pills**

In Count 6, plaintiff alleges that defendants Lim and Carrasco's refusal to provide his pills constituted deliberate indifference.  Without factual allegations explaining the medication and plaintiff's entitlement to it as well as the circumstances of its denial, plaintiff's allegations are merely conclusory and fail to state a claim upon which relief can be granted.

**4.   Denial of Medical Shoes.**

In Count 14, plaintiff alleges that Dr. Moustafi evinced deliberate indifference to plaintiff's severe medical need by denying plaintiff medical shoes.  Once again, because plaintiff provides no factual underpinning supporting this conclusory claim, it fails to state a claim upon which relief can be granted.

In addition, plaintiff contends that, by denying plaintiff medical shoes, Dr. Moustafi committed malpractice.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  *See also* Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Toguchi, *supra*, 391 F.3d at 1057, 1060 (stating that "[d]eliberate indifference is a high legal standard."); Clement v. Gomez, 298 F.3d 898, 904-05 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 200) (en banc); Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998); Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1997)(en banc); McGuckin, *supra*, 974 F.2d at 1059;  Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1998); Toussaint v. McCarthy, 801 F.2d 1080, 1113 (9th Cir. 1986), *cert. denied*, 481 U.S. 1069

16

(1987), *abrogated on other grounds by* <u>Sandin v. Connor</u>, 515 U.S. 472 (1995).  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs.  *See* <u>Toguchi</u>, *supra*, 391 F.3d at 1060.

### 5.   <u>Failure to Provide Eight Prescribed Therapy Sessions</u>

In Count 15, plaintiff alleges that Nurse Doe and Clerks Cindy and Debi were deliberately indifferent to severe medical needs in failing to provide him the eight therapy sessions prescribed by the orthopedist.  As presently drafted, however, plaintiff's factual allegations regarding these defendants suggest that these three defendants, or whichever of them was responsible for making prisoners' appointments at KMC, repeatedly made appointments for plaintiff's first therapy session, but that transport was not provided repeatedly.  Plaintiff may wish to clarify his factual contentions in his amended complaint.

In any event, delay in of, or interference with, medical treatment can also amount to deliberate indifference.  *See* <u>Jett</u>, *supra*, 439 F.3d at 1096; <u>Clement</u>, *supra*, 298 F.3d at 905; <u>Hallett</u>, 296 F.3d at 744; <u>Lopez</u>, *supra*, 203 F.3d at 1131; <u>Jackson</u>, *supra*, 90 F.3d at 332; McGuckin, *supra*, 974 F.2d at 1059; <u>Hutchinson</u>, *supra*, 838 F.2d at 394.  When a prisoner alleges that delay in medical treatment evinces deliberate indifference, however, the prisoner must show that the delay led to further injury.  *See* <u>Hallett</u>, 296 F.3d at 745-46; <u>McGuckin</u>, *supra*, 974 F.2d at 1060; <u>Shapley v. Nevada Bd. of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).  Having failed to allege additional injury, plaintiff fails to state a cognizable claim in Count 15.

### G.   <u>Cruel and Unusual Punishment</u>

In Count 1, plaintiff contends that he was subjected to cruel and unusual punishment when Deputy Hall failed to wake plaintiff, sleeping under the influence of medication administered earlier, resulting in plaintiff's missing lunch.  "The Constitution 'does not mandate comfortable prisons.'"  <u>Farmer</u>, *supra*, 511 U.S. at 832.

> [A] prison official violates the Eighth Amendment only when two requirements are met.  First, the deprivation alleged must be, objectively, 'sufficiently serious[;]' a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities'[.] . . .
>
> The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'  To violate the Cruel

17

1  and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind.'

2  Id. at 834.

3  "What is necessary to show sufficient harm for purposes of the Cruel and Unusual

4  Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson,

5  *supra*, 503 U.S. at 8. "The objective component of an Eighth Amendment claim is . . . contextual

6  and responsive to contemporary standards of decency." Id. *(internal quotation marks and citations*

7  *omitted)*.

8  Missing lunch on a single occasion does not fall within the boundaries of constitutional

9  violation. "The Eighth Amendment requires only that prisoners receive food that is adequate to

10  maintain health." LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993); *see also* Johnson v.

11  Lewis, 217 F.3d 726, 732 (9th Cir. 2000), *cert. denied*, 532 U.S. 1065 (2001); Keenan v. Hall, 83

12  F.3d 1083, 1091 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998). Although plaintiff

13  undoubtedly was hungry and uncomfortable after having missed lunch, in the absence of an

14  unusual medical condition, which has not been alleged in the complaint, his missing a single meal

15  was unlikely to have endangered his health. Nor are any facts alleged suggesting that Hall had a

16  "sufficiently culpable state of mind." Hall's failure to ensure that plaintiff was awakened for lunch

17  does not rise to the level of a constitutional violation.

18  **H.   Excessive Force**

19  **1.   In general**

20  The malicious and sadistic use of force to cause harm always violates contemporary

21  standards of decency, regardless of whether or not significant injury is evident. Hudson, *supra*,

22  503 U.S. at 9; *see also* Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002). "[W]henever prison

23  officials stand accused of using excessive physical force in violation of the Cruel and Unusual

24  Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith

25  effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson,

26  *supra*, 503 U.S. at 7. "In determining whether the use of force was wanton and unnecessary, it may

27  also be proper to evaluate the need for application of force, the relationship between that need and

28  the amount of force used, the threat reasonably perceived by the responsible officials, and any

18

efforts made to temper the severity of a forceful response." Ibid. (*internal quotation marks and citations omitted*).

### 2.    Count 7 (McNell and Ramirez)

Plaintiff alleges that McNell and Ramirez used excessive force but fails to link his claim to the facts necessary to support plaintiff's claim.  As discussed in detail in Section II.B.2. *supra,* Section 1983 requires an actual connection or link between each defendant's actions and the harm allegedly done to the plaintiff.  *See* Monell *supra*,, 436 U.S. at 658; Rizzo, *supra*, 423 U.S. at 362.

### 3.    Count 10 (Roden)

Plaintiff alleges that Roden used excessive force in the November 4 incident in which Roden revoked plaintiff's stool and locked down plaintiff for an "unreasonable reason." "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, *supra*, 129 S.Ct. at 1949.  To "state a claim that is plausible on its face," as Iqbal requires, plaintiff must set forth sufficient factual matter.

### I.    State Claims

Plaintiff alleges that various defendants' actions violated California law.  Section 1983 does not provide a cause of action for violations of state law.  *See* Weilburg v. Shapiro, 488 F.3d 1202, 1207 (9th Cir. 2007)*;* Galen v. County of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007); Ove v. Gwinn, 264 F.3d 817, 824 (9th Cir. 2001); Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997); Lovell v. Poway Unified School Dist., 90 F.3d 367, 370 (9th Cir. 1996); Draper v. Coombs, 792 F.2d 915, 921 (9th Cir. 1986); Ybarra v. Bastian, 647 F.2d 891, 892 (9th Cir.), *cert. denied*, 454 U.S. 857 (1981).  Pursuant to 28 U.S.C. § 1367(a), however, in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary."  Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997).  "The district court my decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367 (c)(3).  The Supreme Court has cautioned that "if the federal

claims are dismissed before trial . . . the state claims should be dismissed as well." <u>United Mine Workers of Amer. v. Gibbs</u>, 383 U.S. 715, 726 (1966).  Accordingly, this Court reserves the right to determine plaintiff's pendant state law claims in the event that an amended complaint states a cognizable federal cause of action.

If plaintiff elects to amends his complaint, as he is permitted to do by this order, and succeeds in alleging a cognizable federal claim, plaintiff is advised that he must demonstrate full compliance  with all requirements of the California Tort Claims Act, including satisfaction of its notice requirement.  In addition, the complaint must allege the facts necessary to establish the elements of any negligence or other claim that plaintiff intends to assert pursuant to California state law.  For example, to establish a medical malpractice claim, plaintiff must establish (1) the medical professional's duty to use such skill, prudence and diligence as is possessed and exercised by others in his profession; (2) the professional's breach of that duty; (3) that the professional's negligent conduct was the proximate cause of plaintiff's resulting injury, and (4) actual loss or damage resulting from the professional's negligence.  <u>Hanson v. Grode</u>, 90 Cal.Rptr.2d 396, 400 (Cal. Ct. App. 1999).

**J.      <u>Declaratory or Injunctive Relief.</u>**

In addition to money damages, plaintiff seeks declaratory or injunctive relief.  Since plaintiff is no longer incarcerated, claims for declaratory and injunctive relief are moot.  <u>Dilley v. Gunn</u>, 64 F.3d 1365, 1368 (9th Cir. 1995); <u>Johnson v. Moore</u>, 948 F.2d 517, 519 (9th Cir. 1991).

**III.    <u>Conclusion and Order</u>**

Plaintiff's complaint fails to state a claim upon which relief may be granted.  The Court will provide plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order.  <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  <u>George</u>, *supra*, 507 F.3d at 607 (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of plaintiff's constitutional or other federal rights.  <u>Leer v. Murphy</u>, 844 F.2d 628, 633-34 (9th Cir. 1988).  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative

level . . . ." Twombly, *supra*, 550 U.S. at 555 (*citations omitted*).  Plaintiff should focus on identifying his legal claims and setting forth, as briefly but specifically as possible, the facts linking the defendants he names to the violation of his rights.

Finally, plaintiff is advised that an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997), *aff'd*, 525 U.S. 299 (1999); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220.  "All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, *supra*, 814 F.2d at 567; *accord* Forsyth, *supra*, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1.      Plaintiff's complaint is dismissed with leave to amend for failure to state a claim;

2.      The Clerk's Office shall send plaintiff a civil rights complaint form;

3.      Within **thirty (30) days** from the date of service of this order, plaintiff shall file an amended complaint curing the deficiencies identified by the Court in this order; and

4.      If plaintiff fails to file an amended complaint within **thirty (30) days** from the date of service of this order, this action will be dismissed with prejudice for failure to state a claim.

IT IS SO ORDERED.

**Dated:    August 10, 2009**                    **/s/ Sandra M. Snyder**
                                                                                                   UNITED STATES MAGISTRATE JUDGE